Cynthia A. DERIJK, et al., Plaintiffs,

v.

SOUTHLAND CORP. A/k/a 7–Eleven, Inc., et al., Defendants.

No. 2:02CV1105K.

United States District Court, D. Utah, Central Division.

Nov. 17, 2003.

Cass C. Butler, Esq., Callister Nebeker & McCullough, Salt Lake City, UT, for defendants.

Blake T. Ostler, Esq., Mackey Price & Thompson, Salt Lake City, UT, for plaintiffs.

## MEMORANDUM DECISION AND ORDER

KIMBALL, District Judge.

This matter is before the court on Defendant 7–Eleven Inc.'s Motion for Partial Summary Judgment. Defendant 7–Eleven Inc. (formerly Southland Corp.) moves for partial summary judgment on Plaintiff Mortensen's sexual harassment claims, Plaintiff Hinson's sexual harassment claims, Plaintiff Hinson's constructive discharge claim, all Plaintiffs' intentional infliction of emotional distress claims, and all Plaintiffs' claims for punitive damages. The court held a hearing on the motion on November 5, 2003. Plaintiffs were represented by Blake T. Ostler, and Defendants were represented by Cass C. Butler. Having fully considered the motion, memoranda, affidavits, and exhibits submitted by the parties and the facts and law relevant to this motion, the court enters the following Memorandum Decision and Order.

## BACKGROUND

Plaintiffs are or were employees at a 7–Eleven convenience store at 3500 South Redwood Road. Defendant Bill Martinez was Plaintiffs' supervisor at that store. Plaintiffs allege that Martinez made offensive sexual comments and advancements on a regular basis, inappropriately touched

and kissed them, and contacted them at home and other places of employment.

## A. Plaintiff Lorey Mortensen

Plaintiff Lorey Mortensen has worked at 7–Eleven since January 2, 1998. She worked at the store managed by Martinez until December 7, 1999, at which time she was transferred to another store because of the sexual harassment complaint she made against Martinez. Mortensen acknowledges receiving and signing a copy of 7–Eleven's sexual harassment policy.

Mortensen testified that her supervisor, Martinez, made inappropriate comments to her, used profanity toward her, tried to kiss her, and pushed her up against a wall and ran his hands down her leg. She testified that if she objected to this conduct, Martinez would cut her hours. In spring of 1999, Mortensen reported this to Janet Carter, a Field Consultant with 7–Eleven. Mortensen never heard back from Carter. When she did not receive a response, she contacted John Graves, the District Manager of 7–Eleven.

After making this report, Martinez again grabbed Mortensen and kissed her in sight of the surveillance camera. Mortensen attempted to telephone Graves and left a message that it was urgent and that he could view the surveillance tape before the tape was copied over. She received no response. Several months after making her complaint to Graves, Graves responded by transferring Mortensen to another store. Mortensen resisted being the one to transfer stores, but was subsequently transferred in January 2000. No disciplinary action was taken against Martinez.

After her transfer, Martinez drove by Mortensen's house in March of 2000 and visited her new store in July of 2001. When Martinez visited her new store, Mortensen states that he acted as though he was inspecting the store, asked her if the coffee was fresh, and asked where they kept the Jolly Rancher candies because he wanted to kiss her. Also, in November 2001, Mortensen was driving by Martinez's store and noticed that he was standing outside on the corner. He put a Jolly Rancher on the front of his mouth, which is what he would do when he wanted to kiss Mortensen. Mortensen shook her head no and drove on. Mortensen did not report these incidents to anyone at 7–Eleven.

At her new store, Mortensen testified that her new manager treated her differently than the other employees. She believes this was because she had filed a complaint against Martinez. In August 2002, Mortensen transferred to a new store and is satisfied with her employment.

Mortensen filed her charge of discrimination with the Utah Anti–Discrimination Division on April 3, 2002. She received her right to sue letter from the EEOC shortly after August 22, 2002.

## B. Plaintiff Cindy Hinson

Plaintiff Hinson worked at the 7–Eleven store managed by Martinez on three separate occasions. Hinson acknowledges receiving and signing a copy of 7–Eleven's sexual harassment policy upon commencement of her employment.

Her initial employment was from May 18, 1999 to October 24, 2000. Hinson testified that Martinez made repeated inappropriate sexual comments to her, used profanity toward her, inappropriately touched her, and had non-consensual sexual intercourse with her on one occasion when she accompanied him to make a deposit at a bank. Hinson did not report these incidents to 7–Eleven or police. Martinez told her that if her could not touch her she would have to quit. On October 24, 2000, Martinez picked up and threw a cash register onto the counter when she refused

his advances. In response to this fit of anger, Hinson punched out and quit.

Martinez then offered to allow Hinson to work under different circumstances, and Hinson returned to work on December 8, 2000 because she could not find other employment. Martinez's inappropriate comments re-commenced and Hinson quit again on January 18, 2001. Hinson, however, testified that she quit this time due to problems with her teenage daughter.

Hinson returned to work at 7–Eleven again on September 5, 2001, when she was offered swing shifts so she would not have to work with Martinez. Hinson left the store on September 24, 2001, when Martinez called her on the telephone and made inappropriate comments while being drunk. Hinson told a co-worker that she was quitting because Martinez had harassed her for "way too long."

During her employment with 7–Eleven, Hinson never reported Martinez's harassment to anyone in management. She testified that on September 25, 2001, she called the corporate offices from a pay phone and stated that she had just quit and wanted to make a complaint against the store manager. She left her telephone number and was told that someone in Human Resources would contact her. When she did not hear back, she called again the next day and left another message. She, again, did not hear back from anyone. Three weeks after quitting, Hinson changed her telephone number to avoid further harassment by Martinez and did not notify 7–Eleven. Hinson filed her charge of discrimination with the Utah Anti–Discrimination Division on March 26, 2002.

### C. Plaintiff Cynthia Derijk

Plaintiff Cynthia Derijk began working at the 7–Eleven store managed by Martinez on April 26, 2001. She acknowledges receiving a copy of 7–Eleven's sexual harassment policy. Derijk claims that Martinez would brush her buttocks as he walked by, kissed her on the lips more than once but less than ten times without her consent, and made numerous inappropriate and offensive comments about her body and sexual acts he would like to engage in with her.

On October 1, 2001, Martinez told her that she was "out of here" which she interpreted to me that she was fired. Derijk called Karen Halliday, Human Resources Manager at 7–Eleven, to complain about the termination. During the telephone conversation she also advised Halliday of the sexual harassment.

On October 8, 2001, Derijk met with Halliday and the Field Consultant, Glen Horricks. During the meeting, Derijk complained of sexual harassment which consisted of: (1) a telephone call made by Martinez to the store when he was drunk in which he asked Derijk to sit on his face; (2) repeated sexual comments made to her in the store and in Martinez's car while they were making a trip to the bank; and (3) Martinez's accusation that Derijk was stealing from the store; and (4) Martinez's derogatory comments about Derijk, and her cleaning business. Derijk testified that she never heard back from 7–Eleven regarding an investigation of her claims. 7–Eleven issued a letter to Martinez on October 19, 2001, stating that Martinez was not to get personally involved with employees or have personal contact with them.

Derijk testified that after she complained the harassment stopped but Martinez and Horricks began to retaliate against her. Derijk testified that a co-worker, Carole Martindale, told her that Martinez did not want her there and wanted to find a way to get rid of her. On January, 2, 2002, Derijk was issued an Employment Performance Notice for hav-

ing over $50 in the cash register in violation of policies. She was terminated on February 6, 2002, for violating the same policy again by having $68 in her cash register. Derijk claims that Martinez and Horricks singled her out in retaliation for her complaints. Derijk admits that Halliday made it clear that she was not to be retaliated against. Derijk, however, did not notify Halliday of the alleged retaliation.

In addition to having a written sexual harassment policy disseminated to all employees upon commencement of their employment, 7–Eleven states that it also had an "Open Door Policy" which was posted at the store. The policy encouraged employees to report any "work-related problems" to the Market Manager, the Human Resource Manager, and the Division Manager. However, none of the employees testified that they received any training with respect to the sexual harassment policy.

In this action, Plaintiffs' Complaint alleges causes of action for hostile work environment, quid pro quo harassment, retaliation, constructive discharge, intentional infliction of emotional distress, civil assault, and battery. On April 11, 2003, this court granted 7–Eleven's motion to dismiss the civil assault and battery causes of action against it.

## DISCUSSION

### Defendant 7–Eleven's Motion for Summary Judgment

7–Eleven asks this court to dismiss all of Plaintiff Mortensen's Title VII claims as barred by the 300–day statute of limitations,[1] to dismiss all of Plaintiff Hinson's Title VII because 7–Eleven can establish both elements of the *Faragher* affirmative

1. 7–Eleven also originally moved to dismiss Defendant Hinson's Title VII claims as time-barred, but it withdrew its arguments after

defense, to dismiss Plaintiff Hinson's constructive discharge claim, to dismiss all of the Plaintiffs' claims for intentional infliction of emotional distress and to dismiss all of the Plaintiffs' claims for punitive damages.

### 1. Plaintiff Mortensen's Title VII Claims—Statute of Limitations

7–Eleven argues that Plaintiff Mortensen's Title VII claims are barred by the statute of limitations because Mortensen filed her charge of discrimination with the Utah Anti-discrimination Division on April 3, 2002, and she transferred from Martinez's store on December 7, 1999. Plaintiff Mortensen argues that 7–Eleven fails to recognize that hostile work environment claims are continuing violations and there were incidents that happened after she was transferred that are sufficient to bring her entire claim within the statute of limitations.

Only one act contributing to the hostile work environment claim must occur within the limitations period. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002); *Jensen v. Henderson*, 315 F.3d 854, 859 (8th Cir.2002). In addition, that act alone need not rise to the level of actionable harassment as long as it is a part of the ongoing violation. *Id.* The *Morgan* Court did qualify its holding stating that "if an act on day 401 had no relation to the acts between days 1–100, or for some other reason, *such as certain intervening action by the employer,* was no longer part of the same hostile environment claim, then the employee can not recover for the previous acts, at least not by reference to the day 401 act." 536 U.S. at 118, 122 S.Ct. 2061 (emphasis added).

Plaintiff argued a continuing violation theory in response.

■ 7–Eleven argues that once Mortensen was transferred, 7–Eleven had taken appropriate corrective remedial action with respect to her hostile environment claim and Martinez's subsequent alleged conduct was no longer part of the previous claim. However, 7–Eleven did not take any remedial action against Martinez at the time it transferred Mortensen. The facts before the court are that 7–Eleven did not even discuss the problem with Martinez, let alone warn him not to continue the harassment. In June or July 2001, Martinez came to the store where Mortensen was working, acted as though he was supervising her work, and made inappropriate comments. Although 7–Eleven claims that Martinez's actions were unrelated to any agency relationship with 7–Eleven, Martinez acted as though he had authority. The court concludes that 7–Eleven's transfer of Mortensen was not an intervening act under *Morgan* and that Martinez's act of making inappropriate comments at Mortensen's new place of employment is an act contributing to Mortensen's hostile environment claim. Therefore, Martinez's visit to Mortensen's new store is a sufficient contributing act to bring the remaining incidents related to Mortensen's hostile work environment claim within the statute of limitations.

### 2. Plaintiff Hinson's Title VII Claims–Affirmative Defense

■ 7–Eleven argues that it can establish both elements of the affirmative defense recognized by the United States Supreme Court in *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) and *Burlington Industries v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). The affirmative defense "comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unrea-sonably failed to take advantage of any preventive or corrective opportunities provided by the employer to avoid harm otherwise." 524 U.S. at 807, 118 S.Ct. 2275.

■ 7–Eleven claims that it is undisputed that it exercised reasonable care to prevent sexual harassment based on its dissemination of a written policy against sexual harassment, which Hinson admits she received. 7–Eleven contends that it can also meet the second element because it is undisputed that Hinson did not make any complaints while she was employed at 7–Eleven and thereby did not take advantage of any preventative or corrective opportunities provided by 7–Eleven. The parties agree that the only attempts Hinson made at making a complaint were two telephone calls she made on the two days after she told a co-worker she was quitting because she had been harassed for far too long.

Although 7–Eleven claims that it exercised reasonable care to prevent the sexual harassment, the facts in the record preclude a finding as a matter of law that its actions were reasonable. Several facts suggest that 7–Eleven's actions to correct the ongoing sexual harassment by Martinez were inadequate. None of the employees testified that they received any training with respect to 7–Eleven's sexual harassment policy. Martinez's alleged harassment of Hinson did not occur until after Mortensen made her complaint and was transferred. However, when Mortensen complained of Martinez's sexual harassment, 7–Eleven took no action against him. There are no facts in the record to suggest that 7–Eleven even spoke to Martinez about the complaint.

Moreover, in addition to taking no action against Martinez, 7–Eleven did not do any follow up monitoring of Martinez's behavior after Mortensen's complaint. *See Faragher*, 524 U.S. at 808, 118 S.Ct. 2275

(noting that among other things "officials made no attempt to keep track of the conduct of supervisors"). 7–Eleven contends that *Faragher's* language that management should have "kept track" of the supervisors' conduct was only because the harassing supervisors were granted virtually unchecked authority over their subordinates and the employees were completely isolated from the employer's higher management. In this case, there is no evidence to suggest that the situation was any different. Martinez was the manager of a store and from the record before the court it appears that the employees working at the store were completely under his supervision and isolated from corporate offices. There is no evidence of any other management being at the store on a routine basis or overseeing Martinez's actions. Based on these facts, the court cannot conclude that 7–Eleven's actions were reasonable as a matter of law.

As to the second element of the *Faragher* affirmative defense, there are additional issues of fact as to whether Hinson's actions were reasonable. Hinson attempted to make complaints to management the day after she left the store because of a harassing telephone call by Martinez. The facts in the record are that she told a co-worker she was quitting because she had been harassed for too long. Hinson left the store and did not report to work the next day. Instead, she called the corporate offices and asked to make a complaint about her store manager. 7–Eleven did not return her telephone call. Hinson called again the next day and 7–Eleven again failed to return her call. The evidence suggests that if 7–Eleven had returned her telephone calls and taken some action, Hinson may not have quit. At the time she attempted to make these complaints, she had not given a formal resignation. She had merely not shown up at work because of the ongoing harassment. A jury is entitled to deter-

mine whether her actions were reasonable. Furthermore, if Hinson is considered to have been constructively discharged when she quit, then this affirmative defense is not available to 7–Eleven. *Faragher*, 524 U.S. at 808, 118 S.Ct. 2275.

Based on the evidence before the court there are issues of fact as to both elements of the *Faragher* affirmative defense. Therefore, 7–Eleven's motion for summary judgment on its affirmative defense is denied.

### 3. Plaintiff Hinson—Constructive Discharge Claim

7–Eleven asserts that Hinson cannot allege constructive discharge because the undisputed facts do not demonstrate that her working conditions were so intolerable that a reasonable person in her position would be compelled to resign. *Jeffries v. State of Kansas,* 147 F.3d 1220, 1233 (10th Cir.1998). "[A] plaintiff must show that she had no other choice but to quit." *Id.*

The Tenth Circuit has held that a reasonable person is not "compelled" to resign if other reasonable alternatives or means to remedy the situation are available. *See Woodward v. City of Worland,* 977 F.2d 1392, 1401 (10th Cir.1992). The *Woodward* court determined that the plaintiff had not established a disputed material fact as to whether the working conditions "were intolerable that a reasonable person would have been compelled to resign" because she did "not establish that she took steps short of resignation that a reasonable person would have taken to make her working conditions more tolerable .... [S]he never determined whether lodging a formal complaint was a reasonable alternative to resignation." *Id.* at 1401–02.

7–Eleven argues that this claim should be dismissed because it is undisputed that Hinson did not make a complaint before

she quit and a reasonable person would have filed a complaint with management before deciding they had no other choice but to quit. However, as discussed above, Hinson did not formally resign before she attempted to make her complaints about Martinez. She merely left the store due to the ongoing harassment and called management the next day instead of reporting to work. 7–Eleven never returned her telephone calls. Had 7–Eleven returned her telephone calls and taken some action to remedy the situation, Hinson may not have quit. Given her attempts to make a complaint and 7–Eleven's failure to return her telephone calls, the court cannot conclude as a matter of law that Hinson failed to take steps short of resignation that a reasonable person would have taken to make her working conditions more tolerable.

 Next, in determining whether conduct is so intolerable that a reasonable person would be compelled to resign, the court should look at "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance." *Hogue v. MQS Inspection, Inc.,* 875 F.Supp. 714, 723 (D.Colo.1995). Furthermore, "each case must be reviewed on its individual merits. No single factor is required but 'cumulative events' can ultimately cause working conditions to deteriorate to an intolerable level." *Id.*

The facts in this case demonstrate that the sexual harassment was daily and severe. 7–Eleven has not provided any evidence refuting the fact that Martinez had nonconsensual sexual intercourse with Hinson. He also told her that if he could not touch her, she would have to quit. Repeated offensive comments, daily unwanted physical contact, and an on-the-job rape clearly raise question of fact for the

jury to decide as to whether Hinson's working conditions meet the intolerable level. Therefore, summary judgment on Plaintiff Hinson's constructive discharge claim is denied.

**4. All Plaintiffs' Intentional Infliction of Emotional Distress Claim**

 7–Eleven argues that the Plaintiffs' intentional infliction of emotional distress claims are barred by the exclusive remedy provision of Utah's Workers Compensation Action ("UWCA") and for failure to meet the required standard of outrageousness under Utah law. Utah Code Annotated Section 34A–2–105 provides:

> The right to recover compensation pursuant to this chapter for injuries sustained by an employee . . . shall be the exclusive remedy against the employer and shall be the exclusive remedy against any officer, agent, or employee of the employer and the liabilities of the employer imposed by this chapter shall be in place of any and all other civil liability whatsoever.

Utah Code Ann. § 34A–2–105 (1997).

In *Mounteer v. Utah Power & Light Co,* 823 P.2d 1055, 1056 (Utah 1991), the Utah Supreme Court held that an employer is liable only to the extent of workers' compensation benefits unless the employer directed or intended the injurious acts. 7–Eleven asserts that Plaintiffs' allegations are not sufficient to sustain the cause of action under the intentional conduct exception because the acts complained of were not done with "a conscious and deliberate intent directed to the purpose of inflicting an injury." *See Lantz v. National Semiconductor Corp.,* 775 P.2d 937, 939–40 (Utah Ct.App.1989).

7–Eleven further argues that even if the exclusive remedy provision of the Workers' Compensation Act does not bar Plaintiff's claim, Plaintiffs' alleged facts do not meet

the standard of outrageousness required under Utah law. "Whether the conduct is outrageous enough is a legal question for the court to resolve." *Richardson v. Valley Asphalt, Inc.*, 109 F.Supp.2d 1332, 1340 (D.Utah 2000).

Plaintiffs argue that 7–Eleven's liability depends on how much it knew about Martinez's behavior. Based on discovery to date, Plaintiffs believe that they were not the first or only females to be sexually harassed by Martinez. 7–Eleven had knowledge of Martinez's pattern of harassment and notwithstanding that knowledge they failed to take action against him, oversee him, or oversee the employees under Martinez's charge. The evidence also appears to demonstrate that Martinez's supervisor, Glenn Horricks, cooperated with Martinez's harassment by participating in the retaliatory conduct against Derijk.

Plaintiffs also allege that 7–Eleven falsified its investigation into Plaintiff Derijk's complaint in order to protect Martinez. Plaintiffs provided an affidavit of Derijk's co-worker that contradicts the information in 7–Eleven's report of her Complaint. Plaintiffs seek to complete their discovery into what 7–Eleven knew and did before the court rules on this issue. Given the evidence in this case so far, the court finds that there is a genuine issue of material fact as to whether 7–Eleven's conduct rises to the level of intentional and deliberate conduct. Plaintiffs are also granted leave to conduct further discovery with respect to this issue. Accordingly, 7–Eleven's motion for summary judgment to dismiss Plaintiffs' intentional infliction of emotional distress claims is denied.

### 5. All Plaintiffs' Title VII Claims—Punitive Damages

■ 7–Eleven argues that Plaintiffs are not entitled to punitive damages on their Title VII claims because it engaged in good faith efforts to comply with the civil rights laws. Under Title VII, punitive damages are available only in "cases in which the employer has engaged in intentional discrimination and has done so 'with malice or with reckless indifference to the federally protected rights of an aggrieved individual.'" *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999) (quoting 42 U.S.C. § 1981a(b)(1)). In *Kolstad*, the Supreme Court held that "[w]here an employer has undertaken [ ] good faith efforts at Title VII compliance, it demonstrates that it never acted in reckless disregard of federally protected rights." *Id.* at 545, 119 S.Ct. 2118.

■ The good-faith defense established in *Kolstad* provides that "an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's good-faith efforts to comply with Title VII." *Id.* The Tenth Circuit has also held that "even if the plaintiff establishes that the employer's managerial employees recklessly disregarded federally-protected rights while acting within the scope of employment, punitive damages will not be awarded if the employer shows that it engaged in good faith efforts to comply with Title VII." *Davey v. Lockheed Martin Corp.*, 301 F.3d 1204, 1209 (10th Cir.2002).

■ 7–Eleven argues that it is entitled to the good-faith defense based on its efforts to comply with Title VII. 7–Eleven relies in part on the fact that it had a written sexual harassment policy in place, each plaintiff acknowledged receiving the complaint, and it had an "Open Door Policy" posted at the store providing contact numbers for managers and directing employees to call with any work-related problems. Also, when Mortensen complained about the harassment, the District Manag-

er transferred Mortensen to another store. And, when Derijk complained of the harassment, a meeting was held and a letter was issued to Martinez warning him not to get personally involved with his employees and not to make any personal contact with them.

However, given the standard in *Kolstad*, the facts of this case present a genuine issue of material fact on the question of 7–Eleven's good faith efforts to comply with Title VII. Although 7–Eleven had a written policy in place and it was disseminated to employees, the employees testified that they did not receive any specific training on the policy and there was no ongoing training in place. As discussed above, 7–Eleven's response to the complaints of harassment and Hinson's attempt to make a complaint raise questions of fact as to their adequacy. 7–Eleven transferred Mortensen without taking any action against Martinez, did not keep track of Martinez's conduct after Mortensen's complaint, wrote a vague letter to Martinez in response to Derijk's complaint, and potentially falsified its investigation into Derijk's complaint. Based on these fact, 7–Eleven's motion for summary judgment to dismiss Plaintiffs' claims for punitive damages based on *Kolstad's* good-faith defense is denied.

## CONCLUSION

Based on the above reasoning, Defendant's Motion for Partial Summary Judgment is DENIED.